## WALLACE & TIERNAN CO., Inc., v. VILLAGE OF LE ROY.

(District Court, W. D. New York. January 29, 1927.)

1. Patents ⊕172—Patentee is entitled to all that his patent fairly covers.

A patentee is entitled to all that his patent fairly covers, though its complete capacity is not set forth in the specification and even was not known to him prior to the grant.

2. Patents ⊕65—Anticipatory invention must fully instruct those skilled in the art how to make and use it.

To be anticipatory a prior invention must be complete and operative, and one that would fully instruct the skilled in the art how to make and use it.

3. Patents ⊕45—That device has displaced others for same purpose is strong evidence of novelty and usefulness.

That a patented device has taken the place of others designed to accomplish the same thing is strong evidence of novelty and usefulness.

4. Patents ⊕21—Substitution of one chemical element for another, which develops a new and novel use, is "invention."

Where change of one material for another does not involve "invention," but when changing one chemical element for another develops a new and novel use, the substitution involves inventive skill.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

5. Patents ⊕328—Darnall, 1,007,647, for process of purifying water, held valid and infringed.

The Darnall patent, No. 1,007,647, for process of purifying water by the introduction of minute quantities of dry chlorine gas, held not anticipated, valid, and claims 1, 2, and 4 infringed.

17 F.(2d)—38

In Equity. Suit by the Wallace & Tiernan Company, Inc., against the Village of Le Roy. Decree for complainant.

Loren N. Wood, of New York City, and J. William Ellis, of Buffalo, N. Y., for plaintiff.

Mayer, Warfield & Watson, of New York City (Frederic P. Warfield, C. A. L. Massie, and Lawrence Bristol, all of New York City, of counsel), for defendant.

HAZEL, District Judge. This suit in equity relates to the infringement of patent No. 1,007,647, dated October 31, 1911, owned by the plaintiff company, and issued to Carl R. Darnall for process of purifying or sterilizing water and sewage by the use of anhydrous chlorin gas in sufficient quantity to destroy the bacteria and other living organisms that may be contained in the fluid. The specification stated that use of dry chlorin, which is sold commercially in a liquid state, has not before been attempted for the purification of water, and for that purpose it is superior to chlorine compounds, and "unless the quantity used is greatly in excess of the quantity necessary, it imparts no taste or odor to the water. Its strength is constant, and the quantity added to the water can be easily regulated, whereas hypochlorites vary greatly in strength and the quantity to be used cannot be quickly determined with accuracy."

It is conceded, by the inventor, that chlorinated lime and chlorinated soda were known and used for disinfecting sewage at the date of his conception, and the use of chlorine gas also had been attempted for like purposes. In disclaiming such use, he states, however, that the use of chlorine gas in a dry state, which is obtained by pressing out all the water, and his specific method for achieving water purification and disinfection are new in the art.

The patent has four claims; 1, 2, and 4 are involved, and they read as follows:

"1. The process of purifying water or sewage which consists in introducing minute quantities of dry chlorine gas into the fluid to be treated.

"2. The process of purifying water or sewage which consists in introducing dry chlorine gas into the fluid to be treated under uniform pressure and maintaining a constant relation between the volume of the gas and the volume of the water."

"4. The process of purifying liquids which consists in establishing a supply of dry chlorine gas under high pressure and ad-

mitting said gas to the liquid to be treated under a uniform low pressure."

In using the process, the contact "between the water and the oxygen occurs when the oxygen is at the height of its efficiency as a purifying agent." The apparatus contains pipes through which the gas flows, and controlling valves for mixing the dry gas, particularly with water, as shown in the drawings attached to the specification. The adaptation of dry chlorine in lieu of wet chlorine was shown to be more practical in use with ordinary metallic materials, and did not require such materials to be specially constructed, as was necessary in using wet chlorine, inasmuch as dry chlorine was noncorrosive.

[1] Neither the claims in suit nor the specification mention this advantage, but it was not required that the patent should do so. In such case the decisions hold that the inventor is entitled to all that his patent fairly covers, even though its complete capacity is not set forth in the specification, and was not known to the patentee prior to the grant. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 435, 31 S. Ct. 444, 55 L. Ed. 527.

Defendant's contention is that the patent and process fails to disclose practical usefulness; that it is invalid, because the prior art showed a similar process; and that the invention was known to the public for more than two years before the application in suit was filed. To negative validity defendant cites the patent to Powers, No. 362,657, which, it is said, was overlooked by the Patent Office, when action was taken on Darnall's application. The Powers discovery did not, however, in substance or by suggestion, include Darnall's. His patent is for an apparatus to generate the chlorine gas chemically— a wet gas—to estop noxious vapors and odors from contaminating the air at sewer openings, and, lacking the elements in suit, there is nothing to show that it was ever used to purify or sterilize water. Nor are any means shown for controlling the wet gas in water purification.

[2] Hargreaves' British patent, No. 23,064, of 1895, contains no disclosure of Darnall's concept of the utilization of minute quantities of gas to secure accurate control with relation to the quantity of water or sewage to be purified. True, a method of applying chlorine directly to sewage is suggested, but Hargreaves evidently did not have in mind the principle of plaintiff's patent, and by his process the good results of Darnall's patent could not be obtained. Nor does Hargreaves specify any means for practicing his invention. In order to be anticipatory, the prior invention must be complete and operative, and one that would fully instruct the skilled in the art how to make and use it. Moreover, Hargreaves used a wet gas, and, accordingly, it has no important bearing upon the invention in suit.

Neither the Nesfield article nor the Lomax patent are anticipatory. In their adaptation and suggestion, chlorine gas was the medium used after applying lime. The cited patents do not show a tangible suggestion as to the amount of chlorine that would be required to sterilize or purify the water. No mention is made of using a minute quantity of gas only, or that a constant relation between the quantity of gas and the quantity of water was essential. The quantities stated by them clearly related to treatment of sewage, and would not have purified water or eliminated odor or objectionable taste. The Nesfield publication suggested chlorine gas to sterilize quantities of water at one operation and adding sodium sulphate to make the water tasteless. Dry chlorine gas was not suggested in his process, and, moreover, the method of adding minute quantities of chlorine gas to attain results was unknown to him. None of the patents or publications mentioned, nor others bearing upon the state of the art, are anticipatory or require a limitation of the claims in suit.

[3] The patentee, concededly, did not invent dry chlorine gas, or the idea of reducing it, under pressure, to a uniform low pressure, or equipments or means for having a constant relation between the gas and water into which the gas flowed in minute quantities. He simply claims that the elements in combination. as applied to dry chlorine. gas as the essential element for water purification purposes, were new and novel and produced a new result. In this, in my opinion, he is borne out by the proofs. He solved existing problems of water and sewage purification, where others, who tried, failed—failed in eliminating odor and taste. His apparatus for performing the process has gone into extensive use. It has taken the place of other devices designed to accomplish the same thing. This is strong evidence of novelty and usefulness. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

Laudatory articles by technical journals devoted to the publication of hygienic subjects and purification of water are in evidence, and the expert witness, Dr. Newlands, agreed that the credit for the introduction of dry chlorine gas for water purification is due

to Darnall, who, he states, made a marked advance in the chemical treatment of water—one of the most important that has been made. He further testified that, before the invention in suit, there were available, for purification of water, methods of filtration, ozone treatments, calcium hypochlorites, and electrolytic chlorin gases or moist gases, but all of them had their faults, some relating to expense, others to the workmen, and still others to difficulties in controlling the flow of the material, and that the process in suit eliminated practically all the enumerated objections, including odor and taste. There is evidence by others of a similar import.

The decisions in Electro-Bleaching Gas Co. v. Miller (D. C.) 264 F. 429, and Electro-Bleaching Gas Co. v. Paradon Engineering Co. (D. C.) 8 F.(2d) 890, were rendered in actions relating to the Ornstein patent, which was upheld; but neither decision impels negativing the validity of the patent in suit. The Darnall patent was somewhat discussed in each case, the court giving credit to Ornstein for having achieved success where previously there had been failures. In the Paradon Case, Judge Campbell gave Ornstein credit for solving the problem of utilizing chlorine and attributed to the Darnall patent a partial success; but, since the Darnall patent was not there in litigation, I must be governed by the evidence before me with relation to its scope and achievement. Ornstein's patent, no doubt, was suggested by Darnall's prior disclosure of the use of dry chlorine gas for water purification, and he made an improvement by his indirect use of the gas as differentiated from Darnall's direct way of using it. It is established before me that Darnall was the first to adopt dry chlorine for water purification, and that he was the first to solve the problems in water purification and overcome the objections to which reference has been made.

[4, 5] The mere change of one material for another would not involve invention. Strom Mfg. Co. v. Weir Frog Co. (C. C. A.) 83 F. 170. But, when the change of one chemical element for another develops a new and novel use, then the adaptation involves inventive skill. McComber, Fixed Law of Patents, p. 645. Darnall, however, did more than this. He not only substituted dry chlorine gas for wet or moist chlorine gas in his process, but included, as an addition, the use of various elements in combination, viz. a minute quantity of gas in relation to the quantity of water to be sterilized, means for controlling the pressure and maintaining uniformity of flow, together with a constant relationship between the quantity of gas and the quantity of water. By dosage of the dry gas, or minute quantities, taste in the water was removed; by controlling the pressure, uniformity of operation was secured; and, in maintaining a constant relation between water and gas, objectionable difficulties and inefficiencies in prior processes were overcome, and odorless and tasteless water maintained. It involved invention to combine and arrange these old elements to accomplish the new result. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

The apparatus used by defendant village of Le Roy was installed by the Paradon Engineering Company. It uses chlorine in the form of a dry gas in its process of water purification, and the instrumentality consists of a chamber or tank, pipes, and valves arranged to use minute quantities of dry gas under a uniformly low pressure, where the dry chlorine has been determined under varying high pressure, and, moreover, the relation between the water and gas is regulable, and a constant relation between the amount of gas and water maintained. The witness Palmer testified that about 1½ pounds of gas was applied in 24 hours to 500,000 gallons of water; that there is a reduction in the pressure between the two gauges, one registering the pressure of the gas in the tank or cylinder, and the other indicating the quantity of gas flowing into the water in proportion to the amount of water to be treated; also, in substance, that the elements of the involved claims were present in its process. Although defendant contends that no relation between gas and water is maintained in defendant's structure, still, by the testimony of its witnesses, Palmer and Schenk, the contrary fairly appears. There exist, no doubt, some minor differences, but a broad enough interpretation of the claims is warranted to include them.

At the trial plaintiff moved that the Paradon Engineering Company be made a party defendant; it appearing, not only that the latter had installed the apparatus, but that it practically defended the suit. It is evident that the Paradon Company has an interest in the litigation adverse to the plaintiff, and, in the circumstances, equity rule 37, providing for making parties defendants at any time if their presence is necessary or proper to a complete determination of the cause, is believed to apply. No testimony was tendered by defendant to support the defense of prior use.

Claims 1, 2, and 4 of the Darnall patent in controversy are valid and infringed by the village of Le Roy, and by the Paradon En-

gineering Company as a contributory infringer. A decree will therefore run against both, in favor of plaintiff, for an injunction and accounting, with costs.