**ELECTRO BLEACHING GAS CO. et al. v. GREENPORT SEWERAGE CO.**

District Court, E. D. New York. May 28, 1929.

No. 3675.

Wood, Molloy & France, of New York City (Drury W. Cooper and Loren N. Wood, both of New York City, of counsel), for plaintiffs.

Alexander T. Schenck, of Newark, N. J. (Lawrence Bristol, of New York City, and Walter W. Burns, of Washington, D. C., of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity for an injunction restraining the alleged infringement by the defendant of United States patent No. 1,142,361, for Process for Antisepticizing Water, issued to Georg Ornstein, assignor to Electro Bleaching Gas Company, dated June 8, 1915, and is based on claims 4, 5, 6, 8, and 10 of that patent.

The title of the defendant was amended on the trial to read "Greenport Sewerage Company" instead of "Greenport Sewage Disposal Company."

The plaintiff Electro Bleaching Gas Company is the owner of the patent, and the plaintiff Wallace & Tiernan Company, Inc., is the exclusive licensee.

The plaintiffs claim that by the operation of an apparatus known as a chlorinator, purchased from Paradon Engineering Company, the defendant is working a process for antisepticizing water and sewage covered by the patent in suit.

The defendant has interposed the twofold defense of invalidity and noninfringement.

The patent in suit has been considered by the courts.

In Electro Bleaching Gas Co. v. Miller (D. C.) 264 F. 429, the patent in suit was held valid and infringed, by the substitution of a valve in complainant's apparatus, but on appeal to the Circuit Court of Appeals for the Eighth Circuit, that court (276 F. 379) reversed upon the ground that the sale of the valve to take the place of the valve furnished by complainant did not constitute contributory infringement, and therefore found it unnecessary to pass on the validity of the patent.

In Electro-Bleaching Gas Co. v. Paradon Engineering Co., 8 F.(2d) 890, this court sustained the validity of the patent as to claims 4, 5, 6, 8, and 10, which were in issue, and found the defendant guilty of contributory infringement of the patent, and, on appeal to the Circuit Court of Appeals for the

Second Circuit, that court [12 F.(2d) 511] affirmed the decree of this court. Certiorari was denied by the Supreme Court (273 U. S. 728, 47 S. Ct. 239, 71 L. Ed. 862).

In Electro Bleaching Gas Company and Wallace & Tiernan Co., Inc., v. Village of Garden City, 33 F.(2d) 209, on a motion for preliminary injunction, this court, in an unreported opinion dated October 30, 1926, held that the defendant was infringing the patent in suit in using an apparatus of the same character as that involved in the case reported in (D. C.) 8 F.(2d) 890, to which there had been added a steel pipe about 36 inches long and 3 inches inside diameter, called a Bull pot, containing 10-penny nails, and through which the solution of chlorine and water was made to pass on its way to the water to be treated, and granted a preliminary injunction and subsequently granted a permanent injunction.

Defendant contends that on the new evidence presented by it in the instant suit, which has not previously been considered by any court on final hearing, a different decision than that arrived at in earlier suits as to the validity of the Ornstein patent should be rendered.

No citation of authorities is necessary to show that if new evidence has been presented, it is the duty of the court to use its independent judgment in deciding whether the patent is valid or invalid.

The apparatus used by the defendant was the same as that which was involved in the suit brought in this court by the plaintiffs against Paradon Engineering Company, except for the alleged Bull pot, and is the same, including the pot, as that involved in the suit brought in this district by the plaintiffs against the village of Garden City, with the exception that in that suit the pot was filled with 10-penny nails, while in this suit it has been filled about every six weeks with iron pieces of various sizes.

The alleged Bull pot is a chamber about 30 inches long and 4 inches in diameter, and through it the solution (minor flow) of water and chlorine is made to pass on its way to the point of application.

Defendant's expert, Professor Phelps, on cross-examination, testified that ferric chlorine is not used in this country at all now to coagulate sewage, and assuming that 10 to 12 pounds of chlorine, as testified, are being applied at Greenport by defendant in 24 hours, to approximately 100,000 gallons of sewage, and that the solution was passing through this pot, which is filled with iron of the nature of Defendant's Exhibit B approxi-

mately every six weeks, the practical value which the ferric chloride would have in the treatment of sewage at Greenport would be none whatever. He further testified that in the treatment of water or sewage with ferric chloride, if coagulation was the object, settling basins or filters would be required to complete the process. He also further said, of the process practiced at Greenport, that it had no practical value so far as disinfection is concerned, and that the iron could be left out and it would be Ornstein.

It is, therefore, apparent that even if, for a short period of time, a trace of iron was added to the minor flow, it did not change the process, and the addition of the Bull pot had no effect, as it played no practical part, but was a mere subterfuge, and the process operated by the apparatus at Greenport was the Ornstein process and not the Bull process.

I see no reason to change the analysis I made of the Bull process patent No. 1,012,808 in my opinion in the suit by these plaintiffs against Paradon Engineering Company [(D. C.) 8 F.(2d) 890, 894].

Patent No. 1,012,809, for apparatus for purifying water, issued to Bull, and dated December 26, 1911, was for an apparatus to practice the process of the earlier patent No. 1,012,808, and what I said of that patent applies equally to this patent, and is not new matter.

The primary purpose of Bull was to produce by such apparatus a solution of an iron compound capable of precipitation to form the coagulating agent, and included electrolysis in the production of the iron solvent.

The suggestion, and it was only a suggestion, that any excess of chlorine produced by the cell might be used as a germicide, resulted from the lack of control of the apparatus over the production of current, rate of the minor flow, means for keeping up a constant supply of iron and amount of chlorine introduced into the minor flow, producing a constantly varying amount of ferric chloride and chlorine, and was distinctly a hit or miss method as opposed to the thoroughly controlled process of Ornstein.

The Bull process patent No. 982,704, and the Bull apparatus patent No. 982,705, teach nothing that requires consideration over the later Bull patents Nos. 1,012,808 and 1,012,809, and in fact do not even contain the suggestion of the later patents as to the use of any excess of free chlorine.

The Bull patents for process No. 1,012,808 and for apparatus, No. 1,012,809, did not disclose two processes, one of applying

ferric chloride for coagulating purposes, and the other for applying chlorine as a germicide, each of which was independently available and this clearly appears from a study of the patents themselves, from which it is apparent that Bull intended only to apply ferric chloride for coagulating purposes and that the application of the excess of free chlorine as a germicide was at most a mere suggestion, dictated by the necessity to dispose of such excess due to lack of control.

The article by Bull, read by Mr. Gwinn, and the discussion thereof by Professor Bartow, require no extended discussion, it being sufficient to quote a paragraph thereof as sustaining the contention that the reference to the use of free chlorine in the Bull patent was only a suggestion. In this article Bull said, in referring to the use of free chlorine:

"This latter application is mentioned here simply as a possibility or rather as a probability and is something that can be simply and promptly tried and proved or disproved, but in the press of more important features of the case simply has not been reached as yet. The experiment might have been tried at Toledo but was overlooked as a possible function of the process until the experiment had ceased and the apparatus dismantled."

The alleged admissions of plaintiff's president, Mr. Tiernan, and plaintiff's employee, Mr. Baker, in the case of Electro Bleaching Gas Co. and Wallace & Tiernan Co., Inc., v. Pascoag Water Co., 34 F.(2d) ——,[1] in the District of Rhode Island, do not seem to me to have any weight in the instant suit, as the conditions at Greenport were in no sense the same as at Pascoag.

I am unable to find that such statements are directly contrary to my conclusions in the Paradon Engineering Company Case, but if defendant is correct in that contention, then all I can say is that in making such statements in the Pascoag Case, the gentlemen mentioned were in error, as I am firmly convinced, despite all the evidence offered in the instant suit, that I was right in finding in the Paradon Engineering Company Case that Bull's process did not disclose any of the following elements of the patent in suit:

"Expanding liquified chlorin to the gaseous state; controlling the quantity of chlorin supplied to the main body of the flowing water by controlling the rate of supply of chlorin to the minor flow; contacting the measured flow of chlorin with the minor flow in the spread-out portion of its path; making the minor flow of water a relatively strong solution of chlorin, or quickly uniting and mixing the minor flow with the major flow."

The contention of Professor Phelps that it was old in the art at that time to use a rheostat and an ammeter, and that by their use Bull could control his current of chlorine, is not convincing, because Bull had no such intention, and, while he used a special and not a standard cell, he did not claim or show any means like a rheostat or ammeter, and in the practice of his process no such control was required, as he was using a great quantity of chlorine as compared to Ornstein, and was merely seeking to get enough chloride to form a coagulent with which to precipitate the solid material in the main flow.

If Bull had used a rheostat and an ammeter, he could not have controlled his surplus chlorine, because his chlorine would have been introduced into an uncontrolled solution, and the amount of iron would have been constantly diminishing, thus destroying control.

In the Bull process, whatever chlorine was made by his special cell was introduced into a minor flow of water but that did not remain a relatively strong solution of chlorine, as it passed into the iron which united with it to make an iron salt, leaving the excess, if any, as the only chlorine in the minor flow when it reached the main flow.

The process described by Bull clearly negatives any intention of "quickly uniting and mixing the minor flow with the major flow," because after the introduction of the chlorine, instead of running his minor flow directly into the main, he runs it through comminuted iron in a comparatively large tank, requiring some time for the combination to be effected, and then spills it out of an open container into an outside receptacle, where an alkali is introduced to aid the precipitation.

There is no evidence that convinces me that the Bull process was practiced by the defendant in this suit, nor was there any real attempt to practice it.

The French patent to Duyck, No. 441,618, it is true, was not introduced in evidence on the trial in the former suit, but it is not new matter as the teaching of the article by Professor Whipple, entitled "Experiments at Ostend and Middelkerke," introduced in evidence on the trial of the former suit, was the same as the disclosure of the said patent, and that article was properly summarized by me in my opinion. (D. C.) 8 F.(2d) 890, 895, 896.

The Bull process, which never came into practical use, is not an anticipation of the Ornstein patent in suit, which has changed the entire art of water purification.

■ The patent in suit is valid and the defendant has infringed claims 4, 5, 6, 8, and 10 thereof on which this suit is based, but a re-

[1] Opinion not yet filed.

cital of the claims, other that claim 8, which is clearly infringed under any theory advanced herein, is unnecessary. Claim 8 reads as follows:

"8. In the sterilization of flowing water, the process which comprises establishing a minor flow of water, causing such minor flow to spread out in one portion of its path to present an extended surface, expanding liquified chlorin to the gaseous state, contacting such chlorin gas with such minor flow in said portion of its path, and thereafter uniting such minor flow of water with the main body of flowing water to be sterilized."

This claim reads directly on the process practiced by the defendant at Greenport, and the practice of the process of the patent in suit is not avoided by the addition of the pot, which does not aid in practicing the Bull process, but is of no value whatever in the treatment of sewage.

Paradon Engineering Company undoubtedly did take over and conduct the defense of this suit during the period of the application for a preliminary injunction and until within two weeks of the trial of this suit, when the defendant took upon itself the conduct of the defense of this suit, and these facts may be recited in the decree.

A decree may be entered in favor of the plaintiffs against the defendant, with injunction, costs, and the usual order of reference.