## WALLACE & TIERNAN CO., Inc., v. CITY OF SYRACUSE et al.

District Court, N. D. New York. August 31, 1929.

Wood, Molloy & France, of New York City (Loren N. Wood, of New York City, of counsel), for complainants.

Lawrence Bristol, of New York City, for defendant city of Syracuse.

BRYANT, District Judge. This is an action in equity, seeking an injunction restraining the city of Syracuse from operating an apparatus known as a chlorinator, which it purchased from the Paradon Manufacturing Company. Plaintiff claims that by the operation of the apparatus the city of Syracuse is working a process of antisepticizing water, covered by United States patent No. 1,142,361, granted to Electro-Bleaching Gas Company, as assignee of George Ornstein. The suit is based on claims 4, 5, 6, 8, and 10 of that patent. Plaintiff is an exclusive licensee under the patent.

Defendant Electro-Bleaching Gas Company refused to become a party plaintiff, and after said refusal was joined as a party defendant. The manufacturer is defending the suit for the city of Syracuse. The defense is invalidity and noninfringement.

The patent in question has been under review before. See Electro-Bleaching Gas Co. v. Miller (D. C.) 264 F. 429; Id. (C. C. A.) 276 F. 359; Electro-Bleaching Gas Co.

and Wallace & Tiernan Co. v. Paradon Engineering Co., Inc. (D. C.) 8 F.(2d) 890; Id. (C. C. A.) 12 F.(2d) 511 (certiorari denied 273 U. S. 728, 47 S. Ct. 239, 71 L. Ed. 862); Same Plaintiffs v. Village of Garden City (D. C.) 33 F.(2d) 209; Same Plaintiffs v. Greenport Sewerage Co. (D. C.) 33 F.(2d) 132.

The validity of the patent as to claims 4, 5, 6, 8, and 10 has been sustained. Electro-Bleaching Gas Co. v. Paradon Engineering Co. (D. C.) 8 F.(2d) 890. Inasmuch as the Ornstein process (the process which plaintiff claims) and the Bull process (the process under which defendant claims) have been carefully analyzed by the court in the above cases, it is not necessary to here set forth the relative purposes, merits, likenesses, or differences of the two processes. To do so would mean repetition of opinions in above cases to a large degree.

The city of Syracuse contends that on the new evidence presented, which at the time of trial had not previously been considered by any court on final hearing, a different decision than that arrived at in the earlier suits should be rendered.

The apparatus used by the city of Syracuse is the same as that involved in the suit against Paradon Engineering Co., cited above, except for the alleged Bull pot, and is the same, including the pot, as that involved in the Village of Garden City suit, cited above, with the exception that in that suit the pot was filled with tenpenny nails, while in this suit it was filled with comminuted iron. It is the same apparatus as that involved in the Greenport Sewerage Company Case, cited above. In the decisions referred to it has been determined that the Paradon apparatus, minus the pot, works the Ornstein process. Therefore the main question in this case is whether or not the Bull pot, as used at Syracuse, changes the apparatus, so that it works some process other than the Ornstein.

The theory of the defense was that, if there was comminuted iron in this pot, the chlorine in the chlorine solution would, to some extent, unite with that iron to make ferric chloride, and the process would thus be changed from the one described by Ornstein to that covered by a prior process patent issued to Bull (United States patent No. 1,012,808). A study of the two process patents leads to the conclusion that the Ornstein process was devised for the purpose of applying chlorine to the water as a germicide, and the Bull process for applying ferric chloride for coagulating purposes. In the present case it seems apparent that the sole object and use of the apparatus is the application of the chlorine to the water for antisepticizing purposes.

The testimony of Professor Phelps, a witness for the defendant city, who made an analysis of the water two days after the Bull pot had been filled with iron, shows that there was .05 parts per million of iron in the water entering the pot; after it passed through there was .1 parts per million. The water which passed through the pot was a minor flow of water. When it reached the major flow, it was diluted in the ratio of 1 to 3,000 according to Professor Phelps. Professor Phelps admitted that such an amount of iron would not be detectible in the major flow; that it did not have any use, and did not have any effect on the major flow. He further stated that the water of Syracuse was clear, and did not require treatment by coagulation. It, therefore, seems evident that the use of the Bull pot on the apparatus in use by the city of Syracuse is merely an attempt to evade the Ornstein process. In fact, it seems apparent that, if the apparatus is used for the purpose of coagulation, settling basins or filters would be required to complete the process.

I am in accord with the analysis of the patents, reasoning, and conclusions stated in the opinion of Judge Campbell (D. C. E. D. N. Y.) in case Electro-Bleaching Gas Co. and Wallace & Tiernan Co., Plaintiffs, v. Greenport Sewerage Co., Defendant, 33 F.(2d) 132. There do not seem to be any facts in the present case to which the opinion in that case does not apply.

The alleged "admissions" of plaintiff's president and its employee, Baker, in the case of Electro-Bleaching Gas Co. and Wallace & Tiernan, Inc., v. Pascoag Water Co.,[1] in the district of Rhode Island, does not seem to be governing in the present case. The statements to which reference is made seem to be more accurately classified as statements descriptive of what they saw at the plant of the Pascoag Water Company, rather than admissions, as contended by defendant. Even though considered as admissions, they have no bearing in this case, other than to aid the court in determining the weight to be given the testimony of these particular persons.

The contention of the city of Syracuse that, because plaintiff sold the defendant city a chlorinator, and because Electro-Bleaching Company, the owner of the patent, sold cylinders of chlorine to the city, which defendant used in the operation of the Paradon machine, to the knowledge of both

[1] Case reopened March 6, 1930.

of these concerns, and without protest from the Electro-Bleaching Gas Company, is an acquiescence of the infringement which estops plaintiff from enforcing its rights is not tenable. Electro-Bleaching Gas Company, having given an exclusive license to plaintiff, is not in a position to acquiesce in the use of the process by the city of Syracuse. Plaintiff was not dilatory in bringing suit. The implied license to use which went with the apparatus sold by plaintiff to the city of Syracuse would not, either by implication or by any other means, cover an apparatus furnished by some one else.

A decree may be entered in favor of the plaintiff against the city of Syracuse, with injunction, costs, and the usual order of reference.