KERR et al. v. GOLDSBOROUGH, Collector of Internal Revenue.

(Circuit Court of Appeals, Fourth Circuit. November 8, 1906.)

No. 665.

INTERNAL REVENUE—LEGACY TAX—LINEAL ISSUE—ADOPTED CHILDREN.

    Act Cong. June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286], as amended by Act March 2, 1901, c. 806, 31 Stat. 938 [U. S. Comp. St. 1901, p. 2286], imposing a succession tax, classified legatees and distributees with reference to their degree of blood relationship to the deceased, and regulated the taxes accordingly. In the first class were placed the lineal issue or lineal ancestor, brother or sister of the decedent; in the second the descendants of a brother or sister; in the third the brother or sister of the father or mother or a descendant; in the fourth class, the brother or sister of the grandfather or grandmother or a descendant; and in the fifth all beneficiaries found to be in any other degree of collateral consanguinity, or who may be a stranger in blood to the person dying seised of the property. Held, that an adopted child, though under the laws of the state entitled to all the rights of heirship of a child born in lawful wedlock, was not a "lineal issue" within the first class, but was a stranger in blood within the fifth class.

In Error to the Circuit Court of the United States for the District of Maryland.

150 F.—19

J. Altheus Johnson (Ellwood O. Wagenhorst, on briefs), for plaintiffs in error.

John C. Rose, U. S. Atty. (Morris A. Soper, Asst. U. S. Atty., on briefs), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

GOFF, Circuit Judge. The plaintiffs in error instituted this action in the court below for the purpose of recovering from the defendant in error a certain sum of money, paid by them under protest, as executors of the will of the late John Sherman. The declaration states that Mary Sherman McCallum, who was the adopted daughter of the said John Sherman, and a legatee under his will, was entitled to receive from said estate the sum of $90,044.39, and that the same was liable to the legacy or succession tax imposed by the Act Cong. June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2286], as amended March 2, 1901, c. 806, 31 Stat. 938 [U. S. Comp. St. 1901, p. 2286]; that the defendant below, the collector of internal revenue, claimed that such sum was liable to be taxed at the rate of $7.50 per $100, for the reason that the said legatee was a stranger in blood to the decedent. The executors insisted that the tax should be assessed at the rate of $1.12½ per $100, the rate provided for by said legislation for one whose legal relationship to the decedent was that of a child begotten in lawful wedlock. The executors paid under protest the tax as claimed by the collector, and then brought this suit to recover the difference between the amount of the tax at $7.50 per $100 and at $1.12½ per $100, the sum of $5,740.33. The declaration alleges that Mary Sherman McCallum, for whose use this suit was prosecuted—whose original name was Kate Rochford—was when a child under nine years of age legally adopted by John Sherman and his wife as their child; that the decree of adoption declared that from its date, the 21st of August, 1876, the said child be to all legal intents and purposes the child of John Sherman and his wife; that under the law of the state of Ohio it was provided that a child so adopted, shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person begotten in lawful wedlock. The court below sustained a demurrer to the declaration, and from the judgment entered the plaintiffs below sued out this writ of error.

The court below sustained the demurrer on the ground that the Congress had made blood relationship the standard by which to determine the rate of tax to which legacies or distributive shares were to be subject. The act of Congress classified the legatees and distributees with reference to their degree of blood relationship to the deceased, and regulated the taxes to be imposed upon legacies and distributive shares accordingly. In the first class were placed those persons who are found to be the lineal issue or lineal ancestor, brother or sister of the decedent. In the second class are the descendants of a brother or sister of the person dying possessed of property. The third class includes those who may be the brother or sister of the father or mother, or a

descendant of a brother or sister of the father or mother. The brother or sister of the grandfather or grandmother, or a descendant of a brother or sister of the grandfather or grandmother, constitutes the fourth class. All beneficiaries found to be in any other degree of collateral consanguinity than before stated, or who may be a stranger in blood to the person who died owning the property, or who may be a body politic or corporate, are placed within the fifth class. Plaintiffs in error insist that the court below erred in holding that for the purpose of assessing the legacy tax imposed by said act of Congress the legacy of Mary Sherman McCallum came under class 5 of the classification of persons made in section 29 of that act, instead of class 1.

It is beyond question that the late Senator Sherman regarded Mrs. McCallum as his daughter; that he always referred to her and treated her as such. It is true that under the law of the state of Ohio—the state where she was adopted—she was to all intents and purposes his child and legal heir, entitled to all his rights and subject to all of his obligations, the same as if she had been by him begotten in lawful wedlock. But was she not nevertheless a stranger to him in blood? A child adopted under the provisions of the laws of a state is given the right to inherit, but that does not make such child the son or the daughter in fact of those so adopting. Is not such child after the decree of adoption as much a stranger to the blood as ever? The Congress in the light of the construction that had been given the adoption and inheritance tax laws of the different states passed the law we now consider, and declared that blood relationship, and not the relationship existing by operation of law, should be the real test of the grade and amount of the tax. The language of the act is clear, and we think was used expressly for the purpose of establishing a uniform system throughout the United States, applicable to inheritance taxes, independent of the statutes, and decisions of the states. That the Congress had the right to so legislate must be conceded; and it is our duty to declare the law as it is written without questioning either its wisdom or propriety. We cannot agree with the contention that the words "lineal issue" include children by adoption. Reaching that conclusion, it follows that the assignments of error are without merit.

There is no error.

Affirmed.

NOTE.—The following is the opinion of Morris, District Judge, on sustaining demurrer:

MORRIS, District Judge. Under the will of the late John Sherman, his adopted daughter, Mary Sherman McCallum, became entitled in the year 1900 to receive from his executors the sum of $90,044.39 in money, which sum was subject to the legacy or succession tax imposed by the acts of Congress.

The United States internal revenue officers assessed the tax at $7.50 per $100, the rate provided by the act of Congress for strangers in blood to the decedent, and the tax assessed amounted to $6,753.32. The executors paid this assessment under protest, claiming that the tax should be assessed at $1.12½ per $100, the rate provided by the act of Congress for one whose legal relationship to the decedent was that of a child.

The executors were forced under protest to pay, and did on November 1, 1903, pay the amount demanded, and now sue the collector to recover back

the sum of $5,740.33, being the excess claimed by them to have been erroneously exacted.

John Sherman and Cecelia Stewart Sherman, his wife, resided in Ohio, and by decree of court adopted Mrs. Callum in her early childhood, then by name Kate Rochford, an orphan whose parents were both deceased, and they had her name changed to Mary Stewart Sherman. From the date of the decree, August 21, 1876, this adopted child was treated and cared for by Mr. and Mrs. Sherman in all respects as their daughter, and in Mr. Sherman's will he refers to her as "my daughter," "my daughter Mary," and in a codicil to his will, she having in the meantime married, he speaks of her as "my daughter" and mentions by name her two children, John Sherman McCallum and Cecelia Stewart McCallum. By the law of Ohio under which the adoption was decreed the probate court which entered the decree was given authority upon the petition of any husband and wife, other requirements being complied with, and upon being satisfied of the fitness and propriety of such adoption, to make an order "declaring that from that date such child to all legal intents and purposes is the child of the petitioner and that its name is changed."

By the Revised Statutes of Ohio for 1906 it is further provided (section 3140): "The natural parents shall by such order be divested of all legal rights and obligations in respect to the child, and the child be free from all legal obligations of obedience in respect to them. Such child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock." By virtue of this law of Ohio and of the decree or order of adoption passed under it the plaintiffs now claim that for the purposes of the assessment of the succession tax Mrs. McCallum is to be regarded as the lawful child and direct heir of the testator.

The acts of Congress in fixing the rate of tax and classifying those subject to it do not mention children nor parents eo nomine, and, even if they did, under similar statutes in New York and Pennsylvania the word "children" has been expressly held not to include children by adoption. In re Mary E. Miller, 110 N. Y. 216–221, 18 N. E. 139; Commonwealth v. Nancrede, 32 Pa. 389.

In the acts of Congress the language describing the first class, in which it is claimed by the plaintiffs that Mrs. McCallum is to be placed, is as follows (Act June 13, 1898, c. 448, § 29, 30 Stat. 464 [U. S. Comp. St. 1901, p. 2307], as amended Act March 2, 1901, c. 806, § 10, 31 Stat. 946 [U. S. Comp. St. 1901, p. 2307]): "First. Where the person or persons entitled to any beneficial interest in such property shall be the lineal issue or lineal ancestor, brother or sister to the person who died possessed of such property as aforesaid, the rate of seventy-five cents for each and every $100 of the clear value of such interest in such property." Those to be placed in the second, third, and fourth classes are described as descendants of brother or sister, brother or sister of the father or mother, or a descendant of a brother or sister of the father or mother, or the brother or sister of the grandfather or grandmother, or a descendant of the brother or sister of the grandfather or grandmother.

The fifth class, which is the class in which the collector placed Mrs. McCallum, is described as follows: "Fifth. Where the person or persons entitled to any beneficial interest in such property shall be in any other degree of collateral consanguinity than is hereinbefore stated or shall be a stranger in blood to the person who dies possessed as aforesaid, or shall be a body politic or corporation, at the rate of $5.00 for each and every hundred dollars of the clear value of such interest: provided that all legacies or property passing by will or by the laws of any state or territory to husband or wife of the person who dies possessed as aforesaid, shall be exempt from tax or duty." The act then provides that where the amount of property shall exceed $25,000 the rate of tax shall be increased 50 per cent., which in this case makes the $5 per $100 equal $7.50 per $100.

It is to be observed that all the classifications are by blood relationship, and that it is the degree of consanguinity to the person who died which regulates the tax, and that all persons more remote in consanguinity

than those enumerated, and strangers to the blood, are put in the fifth class.

The only persons admitted to the first class are the lineal issue or lineal ancestor, or brother or sister of the person who died possessed of the property. It seems to me too clear to be disputed that Mrs. McCallum was not the lineal issue of Mr. Sherman, but that she was a stranger in blood to him.

Legislation may give to one who is adopted all the legal rights of a child, but no Legislature can make such an one the lineal issue of another if in fact a stranger to his blood.

The demurrer will be sustained.