### MILLER et al. v. ELECTRO BLEACHING GAS CO.[*]

(Circuit Court of Appeals, Eighth Circuit. October 28, 1921.)

#### No. 5800.

Patents ⬤≈259—Sale of single part for use in unpatented apparatus for carrying out patented process not contributory infringement.

> The sale by defendant of pressure regulating valves to take the place of regulator valves furnished by complainant as a part of an unpatented apparatus for purifying water in accordance with complainant's patented process, such valves being made and sold by defendant for general use, *held* not to constitute contributory infringement of the process patent.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by the Electro Bleaching Gas Company against William G. Miller and others. Decree for complainant, and defendants appeal. Reversed.

For opinion below, see 264 Fed. 429.

Arthur C. Brown, of Kansas City, Mo., for appellants.

Loren N. Wood, of New York City (David M. Proctor, of Kansas City, Mo., and Drury W. Cooper, of New York City, on the brief), for appellee.

Before HOOK, Circuit Judge, and TRIEBER and NEBLETT, District Judges.

PER CURIAM. This is an appeal from a decree adjudging letters patent No. 1,142,361 valid and that the appellants, defendants in the

⬤≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 256 U. S. —, 42 Sup. Ct. 187, 66 L. Ed. —.

court below, were guilty of contributory infringement. The complaint is in the usual form and charges the defendants with contributing to the use and practice of the process of antisepticizing water, which constitutes the invention set forth in the claims of said letters patent.

The answer admits the issuing of the letters patent to the appellee, the plaintiff assignee of George Ornstein, but denies infringement of any of the 12 claims on which the patent was issued and also attacks the validity of the letters patent, upon the ground that none of the claims of said letters patent can be lawfully construed so as to cover and embrace any device or apparatus made, used, or sold by these defendants; and the further ground that the alleged improvements set forth in said letters patent, particularly pointed out in the 12 claims thereof, were not novel and patentable when produced by the patentee, but that the process described in the claims had been previously patented and described in sundry patents and printed publications, notice of which was given by the defendants to the plaintiff.

In view of the conclusions reached it is unnecessary to pass upon the validity of the letters patent in this opinion.

In the original application Mr. Ornstein asked for letters patent on the process as well as the apparatus, but the request for the apparatus, after having been rejected by the examiner of the Patent Office, was withdrawn and only the application for a process patent was asked and finally, after several rejections and amendments, granted. In the original applications for both letters patents, the apparatus was fully described in the specifications as well as claims; but the application upon which the letters patent were finally granted does not describe the apparatus in any of the claims, but only the process of antisepticizing waters, although in the specifications the apparatus to be used is described, and also illustrations of three kinds of apparatus which may be used are filed. In the specifications it is also stated that "several apparatus are susceptible of use in the process." Among other contrivances in the apparatus there is a shut-off valve and a regulating valve, but no mention of either of these valves or any other parts of the apparatus is set out in any one of the twelve claims.

The apparatus by which the patented process is made operative, as shown by the figures accompanying the application, comprises an absorption tower, through which the minor flow of water passes downward to absorb an upwardly moving current of chlorine gas. The chlorine is supplied from a tank of compressed and liquified chlorine gas from which a pipe leads into the lower part of the tower. The tank is provided with a shut-off valve and the supply pipe with a pressure reducing valve and a regulating valve. Water is supplied to the tower from any suitable source.

The infringement charged is a chlorine gas-pressure regulator, performing the same office and producing the same result as the pressure reducing and regulating valves of plaintiff's apparatus.

The plaintiff had sold to the city of Chicago, for use in its municipal water plants, a number of complete sets of its apparatus; later the city purchased from defendants a Miller chlorine gas-pressure regulator to replace the corresponding part in plaintiff's apparatus. The

reason the city of Chicago made the change, as testified by its assistant city engineer, was that defendants' valves enabled the city to obtain better regulation of gas flow from defendants' valves and a great saving in maintenance costs.

Plaintiff also sold a set of apparatus to the city of Kansas City, Mo., which thereafter purchased from defendants one of their chlorine gas-pressure regulator valves. The reason this last purchase was made, as testified by the city's chemist in charge of water purification of Kansas City, was that plaintiff's valve mechanism was insufficient in capacity to get the required quantity of gas into the coke filled tower.

Do the sales of these valves constitute contributory infringement of plaintiff's process patent? The learned District Judge held they did.

It is neither charged nor claimed that defendants had employed the process of the patent in suit, nor that they had made or sold apparatus for employing that process. All the defendants did was the sales of pressure regulating valves to take the place of regulator valves furnished as a part of the apparatus sold by the plaintiff. Defendants' valves were not made for the purpose of being sold especially to owners or licensees of plaintiff's apparatus, but were manufactured and sold by them for general use and were used in some flour mills.

The real question in issue is whether upon this state of facts a person selling a single part for use in an apparatus employed in manufacturing an article protected by a process patent is guilty of contributory infringement.

What is a process patent? A leading case, uniformly followed, is Cochrane v. Deener, 94 U. S. 780, 788, 24 L. Ed. 139. It was there defined as:

"A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. * * * The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

In the instant case the application for letters patent for the apparatus was denied by the Patent Office and abandoned by the patentee. In Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279, it was said:

"A machine is a thing. A process is an act, or a mode of acting. The one is visible to the eye—an object of perpetual observation. The other is a conception of the mind, seen only by its effects when being executed or performed."

In Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 318, 29 Sup. Ct. 495, 500 (53 L. Ed. 805), it was held:

"A process and an apparatus by which it is performed are distinct things. They may be found in one patent; they may be made the subject of different patents."

The valves sold by defendants in no wise affected the process, but at most the apparatus which was not protected by the letters patent of plaintiff. In any event the most that can be claimed on behalf of the

plaintiff is that the defendants sold one of the elements of plaintiff's unpatented apparatus, because the parties who had purchased the apparatus from plaintiff found defendants' valves to improve the apparatus purchased from plaintiff, and enabled them to use it more economically. Even in apparatus patents it is at best doubtful whether such sales as defendants are chargeable with would constitute contributory infringement. In Thomson-Houston Electric Co. v. Kelsey Electric Ry. Specialty Co., 75 Fed. 1005, 1010, 22 C. C. A. 1, 5, where a similar question was before the court, it was held:

"If a purchaser from the complainant chooses, the day after his purchase, to substitute a stand which is better made, and better adapted to his peculiar needs, he has the right to do so."

The same conclusion was reached in National Malleable Castings Co. v. T. H. Symington Co., 230 Fed. 821, 826, 145 C. C. A. 131, affirmed 250 U. S. 383, 39 Sup. Ct. 542, 63 L. Ed. 1045; Edison Electric Light Co. v. Peninsular Light & Power Co. (C. C.) 95 Fed. 669, 673, affirmed 101 Fed. 831, 43 C. C. A. 479; Rumford Chemical Works v. Hygienic Chemical Co., 148 Fed. 863, 866, affirmed 154 Fed. 65, 80 C. C. A. 177, and 215 U. S. 156, 30 Sup. Ct. 45, 54 L. Ed. 137. In Cortelyou v. Charles E. Johnson & Co., 145 Fed. 933, 76 C. C. A. 455, affirmed 207 U. S. 198, 28 Sup. Ct. 105, 52 L. Ed. 167, it was said:

"We incline to the opinion that the line should be drawn to include those articles which are either parts of a patented combination or device or which are produced for the sole purpose of being so used and to exclude the staple articles of commerce."

Without passing on the validity of plaintiff's process patent, we are of the opinion that the defendants were not guilty of contributory infringement and that the decree of the court below holding that it did must be and is reversed.

HOOK, Circuit Judge, participated in the hearing of this cause, concurred in the result and reasons therefor, and was to write the opinion of the court, but died before preparing it.