## BEIDLER v. PHOTOSTAT CORPORATION.
### No. 1616.

District Court, W. D. New York.
March 30, 1935.

Charles J. Williamson and Frank S. Appleman, both of Washington, D. C., and Lloyd V. Storandt, of Rochester, N. Y., for plaintiff.

Edward H. Cumpston, of Rochester, N. Y. (William H. Davis, Daniel Mahoney, and George E. Faithfull, all of New York City, of counsel), for defendant.

RIPPEY, District Judge.

This is an action for infringement by defendant of United States letters patent No. 1,757,001, issued to plaintiff May 6, 1930, on improvements in a photographic apparatus designed for making photostatic copies of documents on both sides of a film-coated sheet of paper. There are eleven claims in this patent, and plaintiff charges infringement of all claims except claim No. 3. Defendant concedes that claims 1 and 2 and 4 to 7, inclusive, of the patent in suit are valid, denies that the "Photostat Recorder," the machine which it has manufactured and sold since the issuance of the patent to plaintiff, is an infringement of those claims, and puts in issue the validity of claims 8 to 11, inclusive.

Plaintiff also seeks, in this action, to have the scope of the claims contained in his patent broadened by a decree declaring void or of no effect claims 1, 2, 3, 4, 6 to 28, inclusive, in patent No. 1,794,347, issued February 24, 1931, to Arthur W. Caps and Ivan E. Leininger, and now owned by defendant, and that he is the prior inventor of the invention set forth in each of said claims and the owner of said claims as between the parties to this suit and entitled to damages from defendant for infringement thereof in the same manner as though his patent, in fact, contained those claims. Defendant challenges his right to any such decree on the grounds, among others, that plaintiff has abandoned, and is estopped from asserting, any right, if he ever had any such right, to those claims so allowed to Caps and Leininger or to the invention described in and covered by the same, and moved to strike out that part of the complaint which sets up the facts upon which such decree is sought.

Plaintiff alleges that defendant's possession of a "Universal Recorder," the predecessor of its present machine, is an act of infringement, and seeks an accounting from defendant for "duplex" paper manufactured and sold by defendant since the issuance of his patent to users of "Universal Recorders," which were made and sold by defendant prior to the issuance of such patent.

On April 20, 1924, one John S. Greene filed an application in the Patent Office for letters patent on an invention in photographic roll holders, serial No. 733,062, which was later assigned to defendant. The Commissioner of Patents declared an interference with the then pending application of Beidler, No. 704,275, filed April 4, 1924. The subject-matter of the interference was defined in the following count: "In a camera having an exposing chamber and light admitting means, a film holder rotatably mounted in the camera and operative to present two sides of film to light successively, film drawing means and film severing means associated and movable with the film holder, and operative means stationed in locations with relation to which the film holder is movable for imparting motion to the film drawing means and film severing means

when the said film holder is in a predetermined position."

The patent tribunals called upon to act on the interference held that Beidler was entitled to priority of invention on the subject-matter of the interference. The count is in the same wording as claim 4 in Beidler's patent. Later, Greene and the Photostat Corporation filed a bill in equity in the District Court for the Western District of New York under section 4915 of the Revised Statutes (35 USCA § 63) against Beidler and the Rectigraph Company for a decree declaring Greene the inventor of the subject-matter of the interference. An answer was interposed in which defendants claimed priority of invention in Beidler. On the trial it was held that Greene was entitled to priority. On appeal to the Circuit Court of Appeals (Greene v. Beidler, 58 F. (2d) 207), the decision of the District Court was reversed. The sole question involved or passed upon was whether Greene or Beidler first disclosed and demonstrated in a photocopying machine "the mounting on the turntable of the paper feeding rolls and the paper cutting device." There was no question involved in that suit as to whether the decision of the Court of Customs and Patent Appeals in the Beidler-Caps & Leininger interference (hereafter discussed) was wrong nor was the validity of plaintiff's patent passed on. Beidler counterclaimed in that action seeking a determination of the patentability and scope of his then pending application, and set up infringement by defendant by the manufacture and sale of the "Universal Recorder," the machine of the Greene application, but the court dismissed this counterclaim as Beidler's patent had not then issued.

In 1911, defendant made and sold a "Simplex" machine which was suitable for copying records on only one side of the copying paper. It still makes and sells many of these machines. In 1913, there was a cameragraph "duplex" mirror type machine in use in Chicago. Subsequently the defendant developed and in 1924 commenced selling the "duplex" machine of the Greene application. This machine was not satisfactory, as it was a hand-operated type requiring two men to operate and was slow owing to the requirement that the turntable should be in a fixed predetermined position before the film-severing knife and film-moving mechanism could work. The Cameragraph Company of Kansas City had, in the meantime, developed the highly efficient Caps & Leininger machine later described. In 1925, defendant took over the Cameragraph Company. It ceased manufacturing the "Universal Recorder" and replaced it with the Caps & Leininger machine, advertising and selling the latter as "Model No. 2, Photostat Recorder." It continued to sell "Universal Recorder" still in stock until August 20, 1928, since which date none have been manufactured or sold. Twenty-five of the "Universal Recorders" were sold. All were called in by defendant and all returned except five, which are still in the hands of the original purchasers. All of those returned to defendant have been junked except one, which defendant has used as an exhibit in this case.

It is conceded that the "Universal Recorder" was an infringement of claim 4 of the patent in suit. Plaintiff claims that defendant's possession of the single machine used as an exhibit is a past and continuing act of infringement. It was one of the dismantled machines and was reassembled shortly before the trial and brought into court in an operative condition. It has not been used or exhibited except for the purposes of this litigation. Its presence in court was important to enable the court to visualize and compare the mechanism and principles of operation of the Greene machine with the Beidler and the Caps & Leininger machines. The circumstances here are such as not to entitle plaintiff to injunctive relief against infringement. There is no threatened or contemplated infringement. The evidence establishes that defendant entirely ceased the manufacture or use or sale of the "Universal Recorder," the infringing machine, after the grant of the patent in suit. The possession as a model does not constitute actual or threatened infringement in the absence of proof that the machine is held for purposes of profit in violation of the exclusive right of the patentee to make, use, and sell the patented invention, where there has been no invasion or threatened invasion of the patentee's monopoly after the grant. Standard) Measuring Machine Co. v. Teague (C. C.) 15 F. 390; Bonsack Machinery Co. v. Underwood (C. C.) 73 F. 206, 211; Robinson on Patents, § 899; Westinghouse Electric & Mfg. Co. v. Stanley Electric Mfg. Co. (C. C.) 116 F. 641; Deere & Webber Co. v. Dowagiac Mfg. Co. (C. C. A.) 153 F. 177.

From the time defendant put the "duplex" machines on the market, it has sold a copying paper to users of those machines.

The fact appears that its paper has been used almost exclusively by users of all "duplex" machines. Because of this fact, plaintiff claims that defendant is liable for contributory infringement, and that an injunction should issue forbidding it to further advertise the paper for use. This claim can apply only to the five "Universal Recorders" still in use. Defendant has advertised and still advertises itself as a retailer only of paper in rolls of 350 feet in length and of desired width, sensitized on one or both sides, and varying in quality and kind, stating, in its advertising matter, that "all of these papers are sensitized by the Eastman Kodak Company exclusively for the Photostat Corporation for use in the Photostat Recorder," that "the unequaled technical and productive facilities of the Eastman Kodak Company are a continual assurance of unlimited supply of sensitized paper of the most excellent and uniform quality," and that the papers used are severally watermarked "Byron Weston Co. Linen Record 1925 Photostat" or "Eastman Kodak Company." While defendant specifically refers to the suitableness of the paper for use in the "Photostat Recorder," it advises the public as to the source of the supply. Defendant nowhere advertises that this is the only paper or only make of paper that can be used for photocopying purposes. It states that the best results can be obtained from its use in the "Photostat Recorder." There has not been called to the attention of the court any advertising matter of defendant issued since the issuance of the patent in suit containing any statement that the paper sold by it either can or should be used in "Universal Recorders," nor is any reference to that machine anywhere made. Nor is there a scintilla of evidence from which any inference may be drawn that the Eastman Kodak Company will not sell suitable paper to any one who wishes to purchase it. In other words, there is an open source of supply of photocopying paper for any one who may wish to buy, no matter what type of machine he may be using.

It is readily admitted by defendant that it has sold its paper to some users of "Universal Recorders" since the issuance of the patent in suit. Defendant had the same right to sell its paper to any one seeking to purchase as had any other maker or retailer. None of the claims of the patent in suit covers photocopying paper as an essential element of the invention, and its sale to us-

ers of infringing machines does not constitute infringement. Individual Drinking Cup Co. v. Errett (C. C. A.) 297 F. 733; Miller v. Electro Bleaching Gas Co. (C. C. A.) 276 F. 379, certiorari denied 257 U. S. 660, 42 S. Ct. 187, 66 L. Ed. 422; Carbice Corporation v. American Patents Development Corporation, 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500.

The bill of complaint is utterly devoid of any allegations necessary to sustain contributory infringement arising out of the sale of paper to users of the infringing machines. If the article is capable of an infringing use, it must be alleged and the proofs must show that it is manufactured and/or sold to infringers with knowledge and intent and with the purpose that it will be so used. Westinghouse Electric & Mfg. Co. v. Precise Mfg. Corporation (C. C. A.) 11 F.(2d) 209; Miller v. Electro Bleaching Gas Co. (C. C. A.) 276 F. 379.

It now becomes necessary to consider the proceedings in the Beidler-Caps & Leininger interference in connection with the coverage and scope to be allowed to the claims of the patent in suit. Beidler's application, serial No. 704,275, upon which the patent in suit was issued, was filed in the Patent Office April 4, 1924. Arthur W. Caps and Ivan E. Leininger filed an application, serial No. 641,471, on May 25, 1923, on a photographic copying machine.

The two applications contained the same broad subject-matter of invention. On March 6, 1925, the Patent Office declared an interference between Beidler and Caps and Leininger, and the interference counts were stated as follows:

"1. The combination with a camera body and a support for a sheet of double coated sensitive material in the focal plane thereof, of means for rotating said support within the camera body to present first one side and then the other side of the sensitive material to exposure.

"2. In a camera having a chamber and a lens, a member for holding film in the focal plane of the lens, and means for mounting the holder for movement in situ whereby the sides of the film are successively exposed to light admitted by the lens.

"3. In a photographic camera, the combination with the casing and lens, of a frame mounted on the casing to rotate on an axis

transverse to the optical axis of the lens, means carried by said frame for supplying photographic material, and means carried by said frame and projecting into the casing across the optical axis of the lens for reversably positioning such photographic material in the focal plane of the lens."

Beidler asserted disclosure in 1909, and elected to stand, as shown by his preliminary statement and by the evidence, for proof of reduction to practice upon a machine completed in March, 1924, whereas Caps and Leininger relied on May 25, 1923, for both conception and constructive reduction to practice and completed their first machine in the fall of 1923. After due trial, the Examiner of Interferences held that Beidler's 1909 sketch and disclosure to Cramer and his 1923 disclosure to Smith were irrelevant, and that Beidler was guilty of lack of diligence in reducing his invention to practice after Caps and Leininger entered the field. The conclusion reached was that, although Beidler was an active inventor in the photocopying field, Caps and Leininger were the first to file their application and the first to reduce the invention to practice, and were thus entitled to priority of invention. Upon appeals by Beidler, this decision was unanimously affirmed · by the Examiners-in-Chief on April 27, 1927, and affirmed by the Commissioner on December 2, 1927. Thereupon Beidler appealed to the Court of Appeals of the District of Columbia, and the decision of the Commissioner was affirmed on all counts by the Court of Customs and Patent Appeals on December 19, 1929. Beidler v. Caps et al., 36 F.(2d) 122. Upon Beidler's canceling the broad claims involved in the interference, the Commissioner of Patents issued to Beidler on May 6, 1930, the patent in suit containing claims which were of necessity narrower and more restricted than the counts of the interference. On February 24, 1931, there was issued to defendant, as assignee of Caps and Leininger, patent No. 1,794,347, containing the claims which broadly defined the invention which plaintiff claimed in the interference. Plaintiff here seeks to have this court declare the claims thus awarded to Caps and Leininger invalid, and to decree that he is entitled to them "as if in fact his patent contained or repeated them." Complaint, par. 7. Plaintiff, relies largely for success on the question of infringement upon a. decision by this court in his favor on this point. ·It is manifest that no such decision can be made here.

In only three cases could the decision of the patent tribunals be impeached by the plaintiff: (1) He might have filed a bill in equity in the federal courts under the provisions of section 4915 of the Revised Statutes (35 USCA § 63), but this he did not do. It is now too late for such action, unless it be shown that the delay in filing the bill was unavoidable. There is not only no such showing here, but the evidence, if that question should be deemed proper in this case, indicates that there was no proper excuse for delay, and the claims in plaintiff's application which the · Patent Office rejected will be deemed abandoned. Gandy v. Marble, 122 U. S. 432, 7 S. Ct. 1290, 30 L. Ed. 1223. (2) The two patents are not interfering patents within the meaning of section 4918 of the Revised Statutes (35 US CA § 66) as they lack substantial identity of scope which must be found as a prerequisite to interference (Nathan Mfg. Co. et al. v. Craig et al. [C. C.] 49 F. 370), and plaintiff is thus barred from taking advantage of the provisions of that section (International Signal Co. v. Vreeland Apparatus Co. [C. C. A.] 278 F. 468). (3) In an action by defendant on its patent for infringement. This action is not for infringement of the patent granted to defendant on the invention involved in the interference in the Patent Office. Under the foregoing circumstances, the decision of the patent tribunals are final and conclusive as to the plaintiff in this case, and he cannot allege or maintain priority of invention over Caps and Leininger or that there is an interference between the broad claims of defendant's patent and the restricted claims of the patent in suit, or that defendant's patent is invalid. International Signal Co. v. Vreeland Apparatus Co., supra; Craig Demagnetizer & Ink Dryer Corporation v. Static Control Co. (C. C. A.) 295 F. 72.

Thus, whether the patent tribunals were right or wrong in rejecting Beidler's claims, this court is not at liberty to inquire nor could the court in Greene v. Beidler, supra, consider that question. Hubbell v. United States, 179 U. S. 77, 83, 21 S. Ct. 24, 45 L. Ed. 95; Smith v. Magic City Kennel Club, 282 U. S. 784, 789, 51 S. Ct. 291, 75 L. Ed. 707. By cancellation of the claims in the interference and acceptance of the patent with its restricted claims, Beidler is estopped to claim the benefit of the canceled claims. The claims accepted cannot be expanded or construed to cover the same scope as those rejected, nor can resort be had to

the doctrine of mechanical equivalents to broaden the accepted claims so as to include the matter in the rejected claims. Smith v. Magic City Kennel Club, supra; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., supra; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162; Racine Confectioners' Machinery Co. v. Metro Chocolate Co. (D. C.) 297 F. 635, 639, 641. The scope of his claims is therefore limited to the specific disclosure of "means" as shown in the specifications and drawings and to a narrow construction which will exclude anything that may be covered by the broad claims of the interference. The claims in fact are limited to specific subordinate improvements in the mechanism for operating the feed rolls and the knife in a "duplex" photocopying machine.

■ The machine which defendant is manufacturing is covered by Caps, patent No. 1,800,007, issued April 7, 1931. It is also a patent on specific subordinate improvements in operating mechanism of a "duplex" photocopying machine of the kind disclosed in and covered broadly by the Caps and Leininger Patent, No. 1,794,347. A difference between the two mechanisms is presumed. Knowles v. 138 West Forty-Second St. Corporation (C. C. A.) 43 F.(2d) 929, 930; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23, 23 S. Ct. 521, 47 L. Ed. 689. The difference between the two devices of the patents is apparent. It is not a mere verbal difference, but a difference in structure as well as in principle of operation.

■ That defendant's "Photostat Recorder" does not infringe claims 1, 2, 4, 5, 6, and 7 of the patent in suit is clear. These claims are based on the thought that in the "duplex" machine the rotatable turntable is always returned to its original stationary position before beginning each new cycle of successively exposing the alternate sides of the film; and the film-feeding and film-severing operations may, therefore, always be performed when the film holder is in its original stationary position. The Day patent (1,-057,412), 1913, shows, in association with the stationary film holder of a "Simplex" machine, the same organization of film-feeding and film-severing parts and the same means of operating them. Beidler chose to make use of the stationary film-feeding and film-severing operating cranks of the Day

patent and to interpose between them and the roller driving shaft and the knife-operating shaft on the turntable suitable gearing which would disengage itself when the turntable was moved out of the stationary initial position and would return into engagement when the turntable was returned to that initial position; so that the stationary cranks would be connected to operate the film-drawing rolls and the film-severing knives when and only when the turntable was in its stationary initial position. The particular means disclosed in the specification consists in gears 22 and 29 on the stub shafts 21 and 28 connected to the cranks or handles 20 and 27 located exteriorly of the camera. The gears 22 and 29 are so positioned that they will mesh with the corresponding gears 25 and 55 on the shafts operating the film-drawing rolls and the film-severing mechanism when the turntable is in its original stationary position. As soon as the turntable is moved from this original stationary position, the gears 22 and 29 are disengaged from the gears 25 and 55. This mechanism is described in claim 4, which is typical, as: "film-drawing means and film-severing means associated and movable with the film holder, and operative means stationed in location with relation to which the film holder is movable for imparting motion to the film-drawing means and film-severing means when said film holder is in a predetermined position".

It appears from the specification that the "predetermined position" referred to in the claim is the "initial position shown in Fig. 2, in which position the gear wheel 25 will be in mesh with the gear wheel 22 and the teeth of the segments 29 and 55 will also be in mesh." Patent, p. 3, ls. 91–94.

In defendant's patent 1,800,007, under which the "Photostat Recorder" is built, the thought underlying the means for operating the film-drawing rolls and the film-severing knives is the automatic actuation of the film-feeding rolls and the film-severing knives during and as a result of the movement of the turntable, which is caused to rotate continuously in one direction instead of oscillating back and forth through 180° as in plaintiff's patent. This thought is developed in defendant's machine into an arrangement of automatically operated film-drawing means and film-cutting means arranged wholly within the camera and operative only during and as a result of the rotation of the turntable; as distinguished from the mechanism described and claimed

in plaintiff's patent which is manually operated by handles which are fixed in stationary positions external of the camera and are capable of imparting motion to the film-drawing means and the film-severing means when and only when the film holder is stationary in the initial position of the cycle. Defendant has not made use of the substance of what is shown in plaintiff's patent. Defendant's apparatus operates on a different principle, has a different mode of operation, and produces the ultimate result of feeding the paper and cutting it off in a substantially different way.

Defendant's "Photostat Recorder" machine does not have any externally located stationary cranks or handles corresponding to cranks 20 and 27 of the machine of the patent in suit for operating the feed rolls and the cutting mechanism. The means in defendant's "Photostat Recorder" machine for operating the feed rolls and the knife-severing mechanism are located entirely inside the camera and are automatically operated by and during the rotation of the turntable from its second position to its original position. The defendant's "Photostat Recorder" machine is not capable of "imparting motion to the film-drawing means and the film-severing means when the said film holder is in a predetermined position" as provided in claim 4.

■ Claims 8–11 of the patent in suit are invalid for want of invention, but, even though valid, are not infringed.

Claims 8 to 11 of the patent in suit are predicated upon the use of a latch for holding the turntable in each of its two exposure positions. The necessity to stop and hold the turntable in proper positions for exposure is apparent inasmuch as it is essential that the film holder should be maintained stationary in the focal plane during exposure. The use of latches or locks on any hinged or rotatable device which one desires to fix in a definite position is as old as a handle or latch on an ordinary house door. A latch on the rotatable turntable of a "duplex" photostat machine does not perform a different function or operation from the latches used with similar rotating turntables of the prior art; and its use does not make a new patentable combination. United States Peg-Wood, Shank & Leather Board Co. v. B. F. Sturtevant Co. (C. C. A.) 125 F. 378, 381; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438.

The latch bolt of defendant's "Photostat Recorder" machine is used to control the automatic operation thereof and is not derived from the disclosure of the patent in suit but, on the contrary, the latch is of the well known spring pressed type disclosed in a number of the prior art patents for holding rotatable turntables in their operative positions. (See following patents: Gross, 132,207; Priaulx, 360,479; Savery, 423,448; Jansen, 655,977; Mehlfelder, 1,245,755; Gilmore, 1,249,376; Frassier, 1,461,870.)

■ The latch shown and described in the patent in suit has no tripping means "to release the sheet positioning means and thus permit the latter to rotate thereby reversing the position of the photographic sheet" as required by claim 8, and it is not an automatic latch as required in either of claims 9, 10, and 11. The latch described in the patent is a hand-manipulated latch (patent, p. 3, ls. 70–74; 80–84). This deficiency of the specification to support the claims was made evident at the trial by the fact that plaintiff incorporated in his Exhibit 14, which purported to be an illustrative model of the machine shown in the patent, a spring which had the effect of transforming the latch disclosed in the patent from a hand-manipulated latch into an automatic latch; and plaintiff's witness admitted that no such spring is found in the patent.

■ Only one other point raised by plaintiff need be considered. Plaintiff claims that defendant has admitted that claim 4 of the Beidler patent reads on the "Photostat Recorder" and is now estopped from controverting the fact, and this claim is founded on the following facts: On June 22, 1925, Arthur W. Caps filed an application, No. 38,844, for a patent for improvement in a photographic copying machine and patent No. 1,800,007 was granted to defendant as assignee on April 7, 1931. On October 29, 1925, the Examiner suggested to Caps that under the provisions of rule 96, claim 4 (then claim 12) of Beidler application (704,275) should be made for the purpose of interference and notified Caps that failure to make this claim on or before November 9, 1925, would be taken as a disclaimer of the subject-matter covered thereby. On November 15, 1925, Caps amended his application by making this claim which was numbered 121 therein. On November 15, 1925, Caps was notified by the Examiner that, in accordance with rule 129, his case was added to interference No. 52,166; that

the count was placed in interference with the Greene and Beidler application. No preliminary statement was filed as required by rule 110, and no testimony was taken. Consequently, Caps' claim 121, corresponding to the count in issue (being in the exact wording of claim 4 of Beidler's patent), was finally rejected under rules 114 and 132, and no appeal was taken. It will be noted that Caps' claim was not made in the Beidler-Caps and Leininger interference out of which emerged patent No. 1,794,347, but rather in the Beidler-Greene interference. At the same time, Greene's application No. 733,063 was pending, and the Patent Office suggested to Greene that the same claim be inserted in his application for purposes of interference. Both applications were owned and being prosecuted by defendant. When Caps amended his application by adding claim 121, he had no knowledge of the contents of Beidler's application. This knowledge was first acquired after Greene had filed his preliminary statement under rule 110. Thereupon, under rule 94, defendant, owning both of the Caps and Greene applications, elected, as it had a right to do, to drop the claim (121) from the Caps application where it did not read on the invention therein disclosed and to make its fight for the claim in the Greene application where it read on the invention which Greene disclosed and which was filed earlier. A motion to dissolve in the Caps application under those circumstances would have been a useless act, and failure to so move constituted no admission that the claim read on the "Photostat Recorder," or that claim 4, finally awarded to Beidler in the Beidler-Greene interference on the basis of priority, covered defendant's machine, nor is defendant estopped thereby from asserting the contrary. Dwight & Lloyd Sintering Co. v. Greenawalt (C. C. A.) 27 F.(2d) 823.

I therefore conclude:

(1) That the relief requested under the allegations of paragraph 5 of the complaint should be denied on the merits.

(2) That defendant has not infringed upon claims 1, 2, 4, 5, 6, and 7 of the patent in suit by its manufacture, use, and sale of the "Photostat Recorder" machine.

(3) That the mere possession by defendant of a "Universal Recorder" since the issuance of the patent is not an act of infringement.

(4) That the sale of standard double-coated paper by defendant to owners of infringing "Universal" machines is not a contributory infringement or any infringement of the patent in suit.

(5) That claims 8 to 11 of the patent in suit are invalid because they do not involve invention.

(6) That claims 8 to 11 of the patent in suit are invalid because they define subject-matter which is not disclosed in the patent in such full, clear, concise, and exact terms as are required by the statute; but on the contrary define subject-matter different from and antagonistic to the disclosure of the patent.

(7) That defendant has not infringed upon claims 8 to 11 of the patent in suit.

(8) That the complaint should be dismissed on the merits with costs. Let a decree be entered accordingly.